**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**Holding a Criminal Term**

**Grand Jury Sworn in on April 11, 2024**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 24-cr-** |
| | : | |
| **v.** | : | |
| | : | **VIOLATIONS:** |
| **LORI ISABELL MORGAN,** | : | |
| | : | **18 U.S.C. § 1343 (Wire Fraud);** |
| **Defendant.** | : | **18 U.S.C. § 981(a)(1)(C), 21 U.S.C. §** |
| | : | **853(p), 28 U.S.C. § 2461(c)** |
| | : | **(Criminal Forfeiture).** |
| | : | |

**<u>INDICTMENT</u>**

The Grand Jury charges that, on or about the times and dates stated herein:

**<u>Introduction</u>**

At all times relevant to this Indictment:

***The Defendant and Relevant Entities***

1.     Defendant **LORI ISABELL MORGAN** ("MORGAN") was a resident of Washington, DC.

2.     **MORGAN** maintained and controlled an Andrews Federal Credit Union ("AFCU") personal checking account ending in 7385 in her own name and as the sole accountholder.

***The Economic Injury Disaster Loan Program***

3.     The Coronavirus Aid, Relief, and Economic Security Act ("CARES" Act) was a federal law enacted on March 27, 2020, designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19

pandemic.   One source of relief provided by the CARES Act was the authorization of the
Economic Injury Disaster Loan ("EIDL") program to be used to provide relief to businesses
suffering economic harm as a result of the pandemic.

4.      The EIDL program was a disaster relief program administered by the Small
Business Administration ("SBA") that predated the COVID-19 pandemic.   Small business
owners and non-profit organizations in all U.S. states, the District of Columbia, and U.S. territories
could apply for an EIDL.   EIDLs were designed to provide economic relief to businesses that
were experiencing a temporary loss of revenue due to a disaster.   EIDL proceeds were not
intended to replace lost sales or profits or for expansion of a business.   Unlike certain other types
of SBA-guaranteed loans, EIDL funds were issued directly from the United States Treasury, and
applicants applied through the SBA via an online portal and application.

5.      To obtain an EIDL, a qualifying business was required to submit an application to
the SBA and provide information about its operations, such as the number of employees, gross
revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month
period preceding the disaster.   In the case of EIDLs for COVID-19 relief, the 12-month period
was the year preceding January 31, 2020.   The applicant was also required to certify that all the
information in the application was true, correct, and complete, and agree in the required Loan
Authorization and Agreement that the EIDL funds would be used solely as working capital to
alleviate economic injury caused by disaster.   The applicant was warned that any false statement
or misrepresentation to the SBA or any misapplication of loan proceeds might result in sanctions,
including criminal penalties.

6.      The amount of an EIDL, if the application was approved, was determined based, in
part, on the information provided in the application about employment, revenue, and cost of goods,

as set forth above.   Any funds issued under an EIDL were issued directly by the SBA.   EIDL
funds were required to be used as working capital, such as payroll expenses, sick leave, production
costs, and ordinary business obligations, such as debts, rent, and mortgage payments.

7.      The EIDL program paid benefits in connection with a presidentially declared major
disaster or emergency as defined by 42 U.S.C. § 5122.

## COUNTS ONE THROUGH SIX
### (Wire Fraud)

8.   Paragraphs 1 through 7 are realleged here.

### The Scheme to Defraud

9.      Beginning in at least July 2020, and continuing through at least December 2020, in
the District of Columbia and elsewhere, the defendant,

### LORI ISABELL MORGAN,

knowingly devised, intended to devise, and participated in a scheme and artifice to defraud and to
obtain, or cause to be obtained, money and property by means of materially false or fraudulent
pretenses, representations, or promises (the "scheme to defraud").

### Goal of the Scheme to Defraud

10.      It was a goal of the scheme to defraud that **MORGAN** would fraudulently obtain
or cause to be obtained, money or property, namely, EIDL funds, by making false and fraudulent
statements on the EIDL application and related documents, including statements about the nature,
size, and existence of the business for which she sought the EIDL funds, and promises to use the
EIDL funds for authorized EIDL expenses, when in fact she intended to and did use or cause to be
used these funds on unauthorized personal expenses, through, among other means, the withdrawal
and use of the EIDL funds via wires in interstate commerce.

## Manner and Means of Scheme to Defraud

It was part of the scheme to defraud that:

11.     **MORGAN** made and caused to be made false and fraudulent statements and promises on the EIDL application and related documents about the nature, size, and existence of her business and that she would use the EIDL funds for authorized EIDL expenses;

12.     By making and causing to be made these false and fraudulent promises, **MORGAN** induced the SBA to approve her EIDL loan application and disburse nearly $150,000 into her AFCU personal checking account ending in 7385;

13.     **MORGAN** then spent and caused to be spent these EIDL funds on unauthorized personal expenses by withdrawing the funds from AFCU by means of ATM withdrawals, branch withdrawals, and debit card purchases.

## Acts in Furtherance of the Scheme to Defraud

### MORGAN Submitted a Fraudulent EIDL Loan Application

14.     On or about July 2, 2020, **MORGAN** submitted and caused to be submitted one EIDL application, with EIDL Application No. 3308177431, under the name of business "Lori morgan."

15.     **MORGAN** falsely claimed and caused to be claimed on the EIDL application that she owned 100 percent of a sole proprietorship "Agriculture" business named "Lori morgan" that was opened on February 3, 2013, was operated out of her apartment, and had ten employees and gross revenues of $7,500,000 for the twelve months preceding January 31, 2020.

16.     On or about July 8, 2020, **MORGAN** electronically signed and caused to be signed a Loan Authorization and Agreement for Application No. 3308177431, agreeing that she would use the proceeds of the loan solely as working capital to alleviate economic injury caused by

disaster.   In so doing, **MORGAN** agreed to be bound by the stated terms and conditions during the term of the EIDL loan.   **MORGAN** further certified under penalty of perjury that she was authorized to apply for and obtain a disaster loan on behalf of the Borrower in connection with the effects of the COVID-19 emergency.

<strong>MORGAN Fraudulently Obtained EIDL Funds</strong>

17.   On or about July 8, as a result of the reliance on the false representations **MORGAN** made and caused to be made in EIDL Loan Application No. 3308177431 and the accompanying Loan Authorization and Agreement, the SBA approved the requested EIDL.

18.   On or about July 8, 2020, the SBA disbursed $149,900 in EIDL funding to **MORGAN's** AFCU account ending in 7385 (pursuant to the Loan Authorization and Agreement, a third-party Uniform Commercial Code handling charge of $100 was deducted from the loan amount of $150,000 prior to disbursement).

19.   The funding posted to **MORGAN's** AFCU account ending in 7385 on or about July 9, 2020.   Prior to the wire transfer, the account contained $0.39.

<strong>MORGAN Spent the EIDL Funds on Unauthorized Personal Expenses</strong>

20.   **MORGAN** spent and caused to be spent the EIDL funds for the personal benefit of herself and others, and on payments and purchases not permissible under the EIDL program, including but not limited to cash withdrawals at ATMs and branch counters, purchases at retail stores, CashApp transfers to other individuals, automotive repair expenses, debt collection payments, restaurants, and travel to Atlantic City, New Jersey and Las Vegas, Nevada.

21.   After receiving the EIDL proceeds, **MORGAN** failed to comply with conditions of the EIDL program.   For example, despite a duty to provide proof of a hazard insurance policy,

when a SBA employee requested such proof from **MORGAN** by e-mail on or about March 17, 2021 and July 13, 2021, **MORGAN** failed to respond or provide such proof.

22.      On December 31, 2020, the ending balance on **MORGAN's** AFCU account ending in 7385 was $829.09.

## Execution of the Scheme to Defraud

23.      On the dates set forth below, in the District of Columbia and elsewhere, the defendant,

### LORI ISABELL MORGAN,

for the purpose of executing and attempting to execute the scheme to defraud described above, transmitted and caused to be transmitted by means of wire communication in interstate commerce, the following writings, signs, signals, pictures, and sounds:

| Count | Approximate Date | Description |
|-------|------------------|-------------|
| 1 | July 2, 2020 | Transmission, by interstate wire from the District of Columbia, to the state of Iowa, of EIDL Application No. 3308177431 on behalf of "Lori morgan" |
| 2 | July 9, 2020 | Transmission, by interstate wire from the District of Columbia, to the state of Missouri, of an ATM withdrawal of $600 from AFCU Account ending in 7385 |
| 3 | July 22, 2020 | Transmission, by interstate wire from the District of Columbia, to the state of Missouri, of a branch counter withdrawal of $5,000 from AFCU Account ending in 7385 |

| Count | Approximate Date | Description |
|-------|------------------|-------------|
| 4 | September 4, 2020 | Transmission, by interstate wire from the District of Columbia, to the state of Missouri, of a debit card purchase at True Color Nails in Washington, DC totaling $91 from AFCU Account ending in 7385 |
| 5 | September 15, 2020 | Transmission, by interstate wire from the District of Columbia, to the state of Missouri, of a branch counter withdrawal of $5,000 from AFCU Account ending in 7385 |
| 6 | October 23, 2020 | Transmission, by interstate wire from the District of Columbia, to the state of Missouri, of a branch counter withdrawal of $5,000 from AFCU Account ending in 7385 |

**(Wire Fraud, in violation of Title 18,
United States Code, Section 1343).**

## NOTICE OF FORFEITURE

The allegations contained in Counts One through Six of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

Upon conviction of the offense(s) in violation of Title 18, United States Code, Section 1343, as set forth in Counts One through Six of this Indictment, the defendant,

**LORI ISABELL MORGAN,**

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense(s).

## MONEY JUDGMENT

Upon conviction, the United States will seek a money judgment.

## SUBSTITUTE ASSETS

If any of the property described above, as a result of any act or omission of the defendant:

      a.     cannot be located upon the exercise of due diligence;

      b.     has been transferred or sold to, or deposited with, a third party;

      c.     has been placed beyond the jurisdiction of the court;

      d.     has been substantially diminished in value; or

      e.     has been commingled with other property which cannot be divided

             without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

**(Criminal Forfeiture, pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c), and Title 21, United States Code, Section 853(p))**

A TRUE BILL:

FOREPERSON

*Matthew M. Graves* /KLR

Attorney of the United States in
and for the District of Columbia